**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| SUSAN M. HARRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **CIVIL ACTION NO. 1:08-CV-648-TFM** |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Following administrative denial of her application for supplemental security income under Title XVI of the Social Security Act ("the Act"). 42 U.S.C. §§ 1381 *et seq.*, Susan M. Harris ("Harris") received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained, the court AFFIRMS THE COMMISSIONER'S decision.

**I.   STANDARD OF REVIEW**

Judicial review of the Commissioner's decision to deny benefits is limited. The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the

correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), citing *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II. ADMINISTRATIVE FINDINGS

Harris, age 34 at the time of the hearing, earned her GED. Harris's past work experience includes employment as a sewing machine operator, secretary, EKG tech, and

school bus driver.[1] She has not engaged in substantial gainful work activity since the alleged onset date of June 30, 2004. Harris claims she is unable to work because of back trouble and depression.[2] Medical records show Harris suffered a coccyx fracture which was relieved by a successful coccygectomy in August, 2004.[3] Due to continued tenderness in her tailbone area, Harris was treated with medication, injections, and radio frequency procedures so that additional surgery was not needed.[4] The record contains radiology and examination reports from July, 2005, which show "no significant abnormality" and normal results.[5] Medical test results through March of 2006 show unremarkable results.[6]

Harris's treating physician, Dr. Kevin Hornsby, completed a physical capacities evaluation on April 10, 2006. Dr. Hornsby opined Harris could pick up ten pounds occasionally and five pounds frequently, could sit four hours in an eight-hour day, but could not stand or walk at all, did not need an assistive device, and would be absent from work more than four days a month due to back and leg pain.[7] Dr. Hornsby also completed a pain assessment which opined Harris's pain would distract from daily activities, was aggravated

---

[1] R. at 305.

[2] R. at 77.

[3] R. at 23.

[4] R. at 23.

[5] R. at 148, 149-51.

[6] R. at 23.

[7] R. at 184.

by physical activity such as walking, standing, sitting, and that she would be severely limited by drug side effects.[8] A State Agency reviewer found Harris could lift and/or carry up to 20 pounds occasionally; lift and/or carry up to 10 pounds frequently; stand and/or walk at least six hours in an eight-hour workday; sit at least six hours in an eight -hour workday; push and/or pull with her upper and lower extremities at will; and occasionally climb, balance, stoop, kneel, crouch, and crawl.[9]  A consultative psychological evaluation was performed by Walter Jacobs, Ph.D., on February 2, 2005. In addition to diagnosing depression and anxiety disorder, Dr. Jacobs wrote that Harris "may not be completely trustworthy."[10]

Harris testified her pain averaged six on a scale of zero to ten, and reached eight or nine on bad days, which occurred twice weekly.[11] She estimated she could stand or sit for approximately 30 minutes before having to change positions.[12] Harris said she had to lay down three to four times a day for 30 minutes to an hour.[13] When asked whether she experienced side effects from pain medication, Harris responded that she was not sure because she lays down after taking the medication.[14] Harris said she could perform

---

[8]R. at 185.

[9]R. at 112

[10]109-110; 110.

[11]R. at 299.

[12]R. at 300.

[13]R. at 300-01.

[14]R. at 301.

4

household chores for thirty minutes at a time and was assisted by her children and family.[15] A vocational expert (VE) testified that Harris's past work as a sewing machine operator was classified as light and unskilled.[16] The ALJ asked the VE whether light work occupations with sit/stand options were available in significant numbers. The VE responded that positions as a mail clerk (non-postal) or courier were within the abilities set forth by the ALJ.[17] Under questioning by Harris's counsel, the VE testified that a person would be disabled if she had the RFC set forth by Dr. Hornsby. The ALJ then asked the VE whether Dr. Hornsby's opinion was based on objective evidence. The VE said the opinion was based on low back pain.[18]

The ALJ found Harris is severely impaired by coccydynia (with a history of coccyx fracture and subsequent coccygectomy), lumbar degenerative disc disease, a depressive disorder and an anxiety disorder.[19] Despite these impairments, the ALJ determined Harris did not have any impairment or combination of impairments that meet or equal in severity any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[20] The ALJ determined Harris's musculoskeletal condition did not meet the requirements of any listed impairment.

---

[15] R. at 304.

[16] R. at 305.

[17] R. at 305-06.

[18] R. at 306-07.

[19] R. at 16.

[20] R. at 18.

This conclusion was based upon State Agency findings and an absence of objective and credible medical findings to the contrary, including results from as x-rays and MRIs of Harris's lumbar spine.[21] The ALJ found Harris had not provided medically-documented evidence of longitudinal psychological symptoms that would warrant a finding of listing-level mental impairment. This conclusion was based upon a lack of ongoing mental health treatment, dosage levels of anti-depressants, and Dr. Jacobs's psychological evaluation.[22]

The ALJ found Harris had the residual functional capacity (RFC) to perform the full range of light unskilled work activity, including the ability to lift and/or carry up to 20 pounds occasionally; lift and/or carry up to 10 pounds frequently; stand and/or walk at least six hours in an eight-hour workday; sit at lease six hours in an eight -hour workday; push and/or pull with her upper and lower extremities at will; and occasionally climb, balance, stoop, kneel, crouch, and crawl.[23] The ALJ explained his RFC finding by first noting Harris's subjective symptom complaints of pain, depression, and anxiety and his duty to evaluate such complaints under the Eleventh Circuit's pain standard. The decision recites the standard requirements of evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged pain arising from that condition, or (2) an objectively determined medical condition of such severity that it can be

---

[21] R. at 18.

[22] R. at 18-19.

[23] R. at 21.

reasonably expected to cause the alleged pain.[24]

The ALJ's recitation of the pain standard acknowledged the importance of a claimant's subjective testimony where such testimony is supported by medical evidence and credible, as determined by the ALJ. The ALJ specifically found Harris is not "wholly credible," and based this finding on inconsistencies between her complaints and daily activities, past statements that she did not experience medicinal side effects, and Dr. Jacobs's report finding her "untrustworthy."[25] The ALJ decision recounts Harris's treatment and positive results for her coccyx fracture, and includes a table showing the dates and unremarkable interpretations of her medical tests. These findings led the ALJ to conclude she could perform the full range of light unskilled work.[26]

The medical opinion of Dr. Hornsby, Harris's treating physician, was discredited by the ALJ. The ALJ found Dr. Hornsby's opinion would warrant a finding of disabled if taken at face value, but noted Dr. Hornsby's use of a check-mark form which failed to provide a rationale "to support the multiple and significant limitations he placed on the claimant, or his opinion of [her] pain and medicinal side effects."[27] The ALJ noted Dr. Hornsby's treatment notes were not consistent with his official opinion, as in February, 2005 when he recommended Harris use a heating pad for a few days, after which she could return to light

---

[24]R. at 22.

[25]R. at 22-23.

[26]R. at 23.

[27]R. at 24.

7

duty.  Harris was instructed to avoid back motion and limit lifting to no more than thirty pounds.[28]  The ALJ contrasted Dr. Hornsby's opinion to the function-by-function assessment of Harris's capabilities by State Agency consultants.  The decision credited the opinions by non-examining State Agency consultants after finding they were supported by, and consistent with, clinical findings in Harris's examination records.[29]

After considering the record evidence, testimony, and Harris's credibility, the ALJ concluded Harris could perform her past relevant work as a sewing machine operator.[30]  Even though the VE did not specifically state Harris was able to perform this work, the ALJ compared the job as performed by Harris with its description in the Dictionary of Occupational Titles to conclude the work was within the light RFC range.[31]  Accordingly, the ALJ determination that Harris can perform her past relevant work directed a conclusion that she is not disabled, and therefore not entitled to benefits under the Act.[32]

### III.  ISSUES

Harris raises four issues for judicial review:

1.  Whether the ALJ misapplied the Eleventh Circuit pain standard.

---

[28]R. at 25, 175.

[29]R. at 24; 112, 135.

[30]R. at 25-26.

[31]R. at 26.

[32]R. at 26-27.  The ALJ's disability analysis followed the  five-step sequential evaluation process set forth in 20 C.F.R. §404.1520  and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).

2. Whether the ALJ erred by failing to recontact Harris's treating physician.

3. Whether the ALJ erred by failing to credit the opinion of the treating physician.

4. Whether the ALJ's RFC finding is supported by substantial evidence.

## IV.  DISCUSSION

### 1. **The ALJ Correctly Applied the Eleventh Circuit pain standard.**

Whatley argues the ALJ's credibility finding did not comply with Eleventh Circuit precedent and constituted reversible error. The Commissioner responds that the ALJ properly evaluated the credibility of Whatley's subjective complaints, correctly applied the Eleventh Circuit pain standard, and issued a finding supported by substantial evidence. The court agrees that the ALJ gave well-reasoned grounds to reject Whatley's allegations and testimony of disability, and therefore, did not err in his application of the law.

The five-step sequential analysis set forth in regulations require that a claimant prove that he is disabled. 20 C.F.R. § 404.1512; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The Eleventh Circuit has set forth criteria for establishing a disability based on testimony of pain and other symptoms. It explained that

> a claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted). A "claimant's

subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). "Indeed, in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). An ALJ must explicitly explain why he chose not to credit a claimant's testimony. *Brown*, 921 F.2d at 1236. When evaluating a claim based on disabling subjective symptoms, the ALJ considers medical findings, a claimant's statements, statements by the treating physician and evidence of how the pain affects the claimant's daily activities and ability to work. 20 C.F.R. § 416.929(a). "The decision concerning the plaintiff's credibility is a function solely within the control of the Commissioner and not the courts." *Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1213 (M.D. Ala. 2002).

The ALJ decision set forth the Eleventh Circuit pain standard requirements of evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged pain arising from that condition, or (2) an objectively determined medical condition of such severity that it can be reasonably expected to cause the alleged pain. In addition, the ALJ noted the importance of an ALJ's credibility findings when applying the pain standard.[33] The ALJ cited inconsistencies in Harris's complaints and daily activities before finding she is not wholly credible. The opinion of Dr. Jacobs was cited as support for this finding, as well as the lack of previous complaint of medicinal side effects,

---

[33]R. at 22.

which were cited by Dr. Hornsby as cause for her extreme restrictions.[34] The ALJ then recounted Harris's history of back pain, surgery, and treatment. Harris underwent a successful coccygectomy in August, 2004. The record indicates this procedure produced "excellent relief of [Harris's] tailbone pain."[35] The ALJ also considered radiology and examination reports from July, 2005, which show "no significant abnormality" and normal results.[36] Medical test results through March of 2006 show unremarkable results.[37] After presenting these results in chart form, the ALJ wrote "while the claimant may have tender points, her physical impairment has not resulted in significant and long-term decreases in her strength, range of motion, sensation, etc. . . ."[38]

Harris makes her argument through reliance on objective medical evidence of the coccydynia relieved through surgery in 2004 and the MRI results of July, 2005.[39] These records were also cited by the ALJ as evidence for his decision that Harris is not disabled. As explained in the ALJ's decision, the surgery produced positive results and the 2005 results show facet hypertrophy "without significant stenosis."[40] Harris also cites Dr.

---

[34]R. at 22-23, 185.

[35]R. at 23.

[36]R. at 148, 149-51.

[37]R. at 23.

[38]R. at 23-24.

[39]Pl. Br. at 9.

[40]R. at 148.

Hornsby's opinion as to her pain level and her own testimony as sufficient to meet the pain standard. While Dr. Hornsby's opinion was discredited by the ALJ, as discussed below, Harris's subjective testimony was found to be inconsistent with the objective clinical findings.[41] The medically uncorroborated complaints were cited as grounds for discrediting Harris's statements of pain. This Court must accept the ALJ's credibility finding, as the ALJ articulated explicit and adequate reasons for his finding. *Wilson, id*.

The ALJ articulated adequate reasons to reject Harris's subjective testimony about pain and disability. This finding, in combination with the generally positive results of objective medical tests support the ALJ's finding that the pain standard was not met in this case.

### 2.     **The ALJ did not err by rejecting the opinion of the treating physician.**

Harris argues the ALJ did not give proper weight to Dr. Hornsby's opinion as the treating physician. The Commissioner responds the medical opinion was correctly evaluated under existing precedent and regulations.

A treating physician's opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004), citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" is present where the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was

---

[41]R. at 23.

conclusory or inconsistent with the doctor's own medical records." *Id.* at 1241, citing *Lewis*. When assessing medical evidence, an "ALJ [is] required to state with particularity the weight [given] the different medical opinions and the reasons therefor." *Sharfarz v. Bowen,* 825 F.2d 278, 279 (11th Cir.1987) (per curiam). Social security regulations require an ALJ evaluating medical opinion evidence to consider a variety of factors, including the examining and treatment relationships, the specialization of the person giving the opinion, and how well the record supports the opinion in question. *See* 20 C.F.R. § 404.1527(d)(1)-(6). "The weighing of evidence is a function of the factfinder, not of the district court. The question is not whether substantial evidence supports a finding made by the district court but whether substantial evidence supports a finding made by the Secretary." *Graham v. Bowen,* 790 F.2d 1572, 1575 (11th Cir. 1986).

Harris argues the ALJ erred because he discredited Dr. Hornsby's opinion and accepted the State Agency reviewing opinion. Dr. Hornsby issued his opinion through Physical Capacities Evaluation and Clinical Assessment of Pain forms, indicating on each that Harris's work activities must be extremely limited with at least four expected absences per month.[42] The ALJ decided the treating opinion failed to provide a rationale "to support the multiple and significant limitations he placed on the claimant, or his opinion of [her] pain and medicinal side effects."[43] The ALJ contrasted Dr. Hornsby's opinion to the function-by-function assessment of Harris's capabilities by State Agency consultants. The decision

---

[42]R. at 184-85.

[43]R. at 24.

credited the opinions by non-examining State Agency consultants after finding they were supported by, and consistent with, clinical findings in Harris's examination records.[44] The ALJ reinforced his decision to credit the State Agency opinions by citing regulations permitting him to give more weight to opinions supported by evidence such as medical signs and laboratory findings.[45] *See* 20 C.F.R. § 416.927.(d)(3).

The decision also contrasted Dr. Hornsby's two-page opinion with his own long-term treatment notes. The ALJ noted that, "on *multiple* occasions," Dr. Hornsby "indicated [Harris's] range of motion in all areas was normal, she had no musculoskeletal deficits, her neurological functioning was intact," and swelling was not mentioned.[46] Perhaps the most telling treatment note shows Dr. Hornsby recommended Harris use a heating pad for a few days, after which she could return to light duty. The only cautions on this report are that Harris avoid back motion and not lift more than thirty pounds.[47] The ALJ contrasted these treatment notes with the check-box form submitted by Dr. Hornsby before determining the treatment notes were the more reliable indicators of Harris's level of physical functioning. Therefore, the ALJ's decision demonstrated Dr. Hornsby's opinion was conclusory or inconsistent with the doctor's own medical records, thus providing good cause for discrediting the opinion. *See Phillips, id.* at 1241.

---

[44]R. at 24; 112, 135.

[45]R. at 24.

[46]R. at 25.

[47]R. at 25, 175.

The court finds the ALJ gave did not err in his decision to discredit the opinion by Dr. Hornsby's regarding Harris's ability to work, but instead, correctly applied circuit precedent in his careful evaluation of the medical evidence in this case.

### 3. **The ALJ's did not have a duty to recontact the treating physician.**

Harris argues the ALJ should have contacted Dr. Hornsby for additional information concerning evidence for his medical opinion. The Commissioner responds the record was sufficient to make a disability determination.

The regulation cited by Harris in support of her argument is 20 C.FR.§ 404.912(e), which requires an ALJ to recontact the medical source if the evidence received is inadequate and additional information is required to reach a decision. The provision allows an ALJ to secure additional evidence or clarification when necessary to resolve conflict or ambiguity, or where a report "does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.FR.§ 404.912(e)(1). Harris argues the ALJ's should have recontacted Dr. Hornsby because the hearing transcript shows he questioned the VE as to whether the medical opinion was based on "X-rays or anything," or if the opinion indicated the reasons for its conclusion.[48] Though at first glace it appears the ALJ's somewhat rhetorical questions should have led him to recontact Dr. Hornsby, a review of decisions which address this same argument show otherwise.

In *Couch v. Astrue*, 267 Fed. Appx. 853, 855-56 (11th Cir. 2008), the Eleventh Circuit

---

[48]R. at 307.

found the duty to recontact did not arise because the ALJ had all the records from the discredited medical source, and there was no need for additional information. Here, the ALJ had copies of Dr. Hornsby's treatment notes for the course of Harris's back pain. Further, the physical assessment form directed Dr. Hornsby to "explain and briefly describe the degree and basis for any restriction," to which he responded "low back pain and [radiating] leg pain."[49] The ALJ could easily assume Dr. Hornsby, as a treating physician who supported disability status for his patient, had provided all the explanation available, especially given the inconsistencies evident in past treatment notes. Similarly, in *Moore v. Astrue*, 2009 WL 1025389, at *4 (M.D. Ga. Apr. 15, 2009), the district court distinguished between truly "inadequate" evidence, and the need to recontact a physician where good cause is found to reject his opinion. The court concluded the ALJ's decision not to recontact the treating physician was an appropriate exercise of ALJ discretion.

The circumstances of this case, primarily the ALJ's possession of Dr. Hornsby's treatment notes, and medical tests from other physicians which showed normal readings on Harris's MRIs, indicate the ALJ had adequate records to make his decision. Using *Couch* and *Moore* as guides, this Court concludes the ALJ was not required to recontact Dr. Hornsby for clarification of his opinion.

### 4. The ALJ's RFC Finding is Supported by Substantial Evidence.

Finally, Harris argues the ALJ's RFC finding lacks the support of substantial

---

[49]The Court adopts the Commissioner's submission that the word preceding "leg pain" is, in fact, "radiating." *See* Def. Br. at 9, R. 184.

evidence. The Commissioner responds the RFC determination was supported by the State Agency reviews of Harris's physical abilities.

As noted earlier in this opinion, the five-step sequential analysis set forth in regulations require that a claimant prove that he is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 1999). Harris's arguments on this issue again attack the ALJ's decision to discredit the opinion of her treating physician and adopt the RFC findings of the non-examining reviewer.[50] Harris correctly points out that non-examining opinions are generally entitled to less weight from those of a treating physician. *See* 20 C.F.R. § 416.927(d). However, in this case Dr. Hornsby's opinion was sufficiently discredited. The ALJ did credit Dr. Hornsby's treatment notes, which were consistent with the conclusions of the reviewers, as well as records provided by other medical professionals.[51]

The weight of evidence in this case supports the ALJ's finding of non-disability, and this claim of error must fail.

## V.  CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**  A separate judgment is entered herewith.

---

[50]Pl. Br. at 13-14.

[51]R. at 24-25; 23.

Done this 12th day of May, 2009.

          /s/ Terry F. Moorer
          TERRY F. MOORER
          UNITED STATES MAGISTRATE JUDGE